CYNTHIA RICHARDSON, individually and as administratrix,[1] *vs.* LIBERTY MUTUAL FIRE INSURANCE COMPANY.[2]

No. 97-P-1954.

Essex. February 22, 1999. - September 10, 1999.

Present: GREENBERG, LAURENCE, & BECK, JJ.

*Insurance,* Construction of policy, Coverage. *Emotional Distress. Dead Body. Words,* "Bodily injury."

In an action brought against an insurer, the plaintiff, on cross motions for summary judgment, did not demonstrate "bodily injury" within the meaning of the term as it appeared in the applicable policy of insurance, and judgment was properly ordered in favor of the insurer. [701-703]

CIVIL ACTION commenced in the Superior Court Department on August 26, 1994.

The case was heard by *Charles M. Grabau,* J., on motions for summary judgment.

*Peter M. Malaguti* for the plaintiff.

*Michael J. Johnson* for the defendant.

LAURENCE, J. In the early morning hours of August 27, 1991, seventeen year old Shannon Richardson, who was involved in a covert liaison with Jeanne Piccirillo, a married woman with children, suddenly died while having sexual relations with Piccirillo in her automobile. After failing to revive Shannon, Piccirillo sat in her car for a time, then dressed, pulled up Shannon's pants, and drove to Shannon's house, where he lived with his family. There she sat in her car at the curb for perhaps ten minutes trying to decide what to do, including whether to call an ambulance, get Shannon's mother, or take Shannon to the hospital. She finally decided that she "didn't know what to do,"

---

[1] Of the estate of Shannon Richardson.

[2] Two other named defendants, John Doe and Jeanne Piccirillo, are not involved in this appeal.

opened the passenger door of her car, said "I'm sorry," and pushed Shannon's body out into the gutter in front of his house. As she did so, she "thought about . . . the effect it [the fact that Shannon's body had been so discarded] would have on the people that loved him."

Upon learning of the circumstances of the discovery of her son's body (apparently by her landlord) while at the hospital where the body had been taken, the plaintiff, Cynthia Richardson, suffered a nervous breakdown. As a result, she required hospitalization, experienced insomnia, appetite loss and panic attacks, confined herself to her home for a year, and for many years thereafter regularly took medication for anxiety and depression. In August 1994, she commenced the underlying action against Piccirillo for wrongful death and for intentional and negligent infliction of emotional distress.

At the time of the actionable event, Piccirillo was insured under a "deluxe homeowners policy" issued by Liberty Mutual Fire Insurance Company (Liberty) that provided a limit of $100,000 coverage for "each occurrence" giving rise to liability under the policy.[3] Liberty assumed Piccirillo's defense. The plaintiff demanded $200,000 under the policy on the ground that Shannon's death and Piccirillo's disposal of his body constituted two separate and distinct occurrences. Liberty rejected this demand, maintaining that the events allegedly triggering liability arose from a single occurrence. The plaintiff and Liberty eventually settled the wrongful death claim for $100,000 on the condition that the question whether the disposal of Shannon's body warranted an additional payment would be submitted to the Superior Court for declaratory judgment.[4]

The plaintiff subsequently amended her complaint to name Liberty as a defendant and to state a cause of action for declaratory relief. She also filed, pursuant to the terms of the settlement, a stipulation of dismissal with prejudice as to the remaining counts of the complaint. Liberty answered and raised several affirmative defenses, which included an assertion that exclu-

---

[3]The policy provided coverage for "occurrences" only when they caused "bodily injury" or "property damage." See *infra* at 702.

[4]Subject to their rights to appellate review, the parties agreed that Liberty would pay the plaintiff an additional $100,000 if the Superior Court determined that further coverage existed under the policy; if the court determined that no such coverage was available, however, Liberty would make no additional payment.

sions under the policy, including one for "bodily injury or property damage . . . which is expected or intended by the insured," precluded coverage for Piccirillo's conduct. The parties then filed cross motions for summary judgment.

The plaintiff continued to argue in her motion that Liberty was liable for an additional $100,000 because her son's death and Piccirillo's disposal of his body were two occurrences which arose from independent causes. Liberty maintained that the $100,000 settlement satisfied its obligation to the plaintiff because the wrongful death and emotional distress claims stemmed from a single occurrence — Shannon's death. Liberty also contended that Piccirillo's conduct with respect to the body fell outside the scope of the term "occurrence," defined under the policy as an "accident" (which was not defined), because she had acted intentionally. In any event, Liberty asserted, coverage was unavailable under the exclusion barring payment for "expected or intended" injury caused by the insured.

A Superior Court judge, acting on a stipulated statement of facts, first ruled that Shannon's death and Piccirillo's disposal of his body constituted two distinct occurrences separated by time, space and reflection. The judge then addressed the question whether the exclusion barring coverage for "expected or intended" injury applied. Relying on *Quincy Mut. Fire Ins. Co. v. Abernathy*, 393 Mass. 81 (1984), he noted that the term "expected" under a homeowner's policy required evidence that the insured knew to a substantial certainty that injury would result from her conduct. The judge determined that Piccirillo, after an extended period of contemplation, had made a conscious decision to leave Shannon's body in front of the plaintiff's home. He found that Piccirillo subjectively knew that her actions would have negative consequences for Shannon's family. Based on these findings and the special status under the law accorded to bodies of deceased persons,[5] the judge concluded that Piccirillo knew and appreciated to a substantial certainty that someone would be injured as a result of her leaving Shannon's body in front of his home. He therefore allowed Liberty's motion for summary judgment, on the ground that coverage for the second occurrence is precluded under the exclusion for injuries expected or intended by the insured.

[5]See *Burney* v. *Children's Hosp.*, 169 Mass. 57 (1897); *Kelley* v. *Post Publishing Co.*, 327 Mass. 275 (1951).

On appeal, the plaintiff challenges the judge's ruling that the policy does not cover the second occurrence (disposal of the body), arguing (for the first time) that there was insufficient record evidence to determine whether Piccirillo intended to harm Shannon's family or knew to a substantial certainty that such harm would result.[6] The plaintiff asserts that the judge erroneously focused on the nature of Piccirillo's acts rather than on her state of mind, which she contends was a genuine issue of fact in dispute. She argues that the circumstances of this case fall outside the small category of cases of egregious conduct in which the intent to injure may be inferred from the conduct itself as matter of law.[7] The limited state of mind evidence in the summary judgment record does not, she contends, support the conclusion that Piccirillo acted intentionally.

Whether the callous dumping of a corpse in a place where it was highly likely to be discovered by the deceased's immediate family is conduct so extreme and outrageous as to warrant an inference of intent to harm as matter of law is a novel question.[8] Without addressing it, however, and without assessing the sufficiency of the state of mind evidence on this record (the substantive issues to which the parties devote their briefs), we conclude that summary judgment for the insurer was appropriate, because the plaintiff's emotional distress was not a "bodily injury" within the meaning of the policy.

The section of the Liberty policy entitled "Liability Coverages" provides, in pertinent part:

---

[6]The plaintiff is, of course, content with the judge's determination (which Liberty does not contest) that two distinct occurrences arose on the day of the incident. Liberty does challenge the plaintiff's right to assert on appeal the existence of any disputed issues of fact in light of her summary judgment motion (predicated on the nonexistence of such issues) and her failure to oppose Liberty's cross motion. There is no merit to Liberty's contention. See *Basch & Sons* v. *Travelers Indem. Co.*, 392 Mass. 1002, 1003 (1984); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2720, at 327-335 (3d ed. 1998).

[7]Our appellate courts have thus far inferred intent to injure as matter of law in only three situations: setting fire to a building, *Newton* v. *Krasnigor*, 404 Mass. 682, 687-688 (1989); sexual abuse of a minor, *Worcester Ins. Co.* v. *Fells Acres Day Sch., Inc.*, 408 Mass. 393, 400 (1990); and pushing a person down a staircase, *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 169 (1983).

[8]But see *Bresnahan* v. *McAuliffe*, 47 Mass. App. Ct. 278, 283 (1999); Restatement (Second) of Torts § 46 comments d, i, j, & k, and illustrations 1, 15, 16, & 19 (1965).

"Coverage E — Personal Liability

> If a claim is made or a suit is brought against an *insured* for damages because of *bodily injury* . . . caused by an *occurrence* to which this coverage applies, we will:

> 1. pay up to our limit of liability for the damages for which the *insured* is legally liable . . . .

"Coverage F — Medical Payments to Others

> We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing *bodily injury*. . . ."

The policy further states that Coverages E and F do not apply to bodily injury "which is expected or intended by the *insured*." A "bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results."

We recognize that "when construing the language of an insurance policy, it is appropriate 'to consider [whether] an objectively reasonable insured, reading the relevant policy language, would expect to be covered.' " *Nashua Corp.* v. *First State Ins. Co.*, 420 Mass. 196, 200 (1995), quoting from *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). We also acknowledge that "an insured is entitled to the most favorable interpretation of the policy language when there is more than one rational interpretation of the policy language, or where the policy language is ambiguous." *Ibid.* Here, however, those principles do not avail the plaintiff.

"Bodily injury" as used in an insurance policy is a narrow and unambiguous term. It includes only actual physical injuries to the human body and the consequences thereof; it "does not include humiliation and mental anguish and suffering." *Allstate Ins. Co.* v. *Diamant*, 401 Mass. 654, 656, 658 (1988). "Bodily injury imports harm arising from corporeal contact. In this connection 'bodily' refers to an organism of flesh and blood. It is not satisfied by anything short of physical, and is confined to that kind of injury." *Williams* v. *Nelson*, 228 Mass. 191, 196 (1917). The words "bodily injury" in an insurance policy do not comprehend nonphysical harm to the person, such as mental

suffering not connected with or arising out of physical injuries. *Allstate Ins. Co.* v. *Diamant*, 401 Mass. at 656-658. Those words "exclude the coverage of mental pain." *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 138 n.9 (1993). In short, "emotional distress is not a bodily injury" for insurance coverage purposes. *McNeill* v. *Metropolitan Property & Liab. Ins. Co.*, 420 Mass. 587, 590 (1995) (no second "per person" bodily injury claim for plaintiff who witnessed decedent daughter's injuries at automobile accident scene and as a result suffered emotional distress that exacerbated his diabetic condition and led to his developing an ulcer).[9] Compare *Lewis* v. *Springfield*, 261 Mass. 183, 187-188 (1927) (mental suffering of plaintiff injured by defect in road could properly be considered in determining his damages award).

The Superior Court judge, therefore, properly allowed Liberty's motion for summary judgment, because the plaintiff did not suffer a "bodily injury" within the meaning of the Liberty policy.[10]

*Judgment affirmed.*

---

[9]The Supreme Judicial Court has explicitly stated that its interpretation of the terms "physical harm" or "harm to the body" in the context of tortious infliction of emotional distress cases does not affect the definition and application of the term "bodily injury" under an insurance policy. See *Sullivan* v. *Boston Gas Co.*, 414 Mass. at 138 n.9; *McNeill* v. *Metropolitan Property & Liab. Ins. Co.*, 420 Mass. at 590 n.4.

[10]A lower court's summary judgment ruling may, of course, be upheld if it is legally correct on the record, regardless of the rationale employed by the judge. See *Aetna Cas. & Sur. Co.* v. *Continental Cas. Co.*, 413 Mass. 730, 734-735 (1992).