JAMES FREEDMAN vs. UNITED STATES LIABILITY INSURANCE COMPANY.

No. 11-P-1427.

Norfolk. April 6, 2012. - August 8, 2012.

Present: MILLS, BROWN, & SIKORA, JJ.

*Insurance,* Insurer's obligation to defend, Coverage. *Contract,* Insurance. *Practice, Civil,* Summary judgment, Waiver.

In a civil action alleging that under a commercial liability insurance policy, the defendant insurer had a duty to defend the insured in an underlying action, the judge properly granted summary judgment in favor of the insurer, where the complaint in the underlying action alleged that the insured had engaged in behavior that was specifically excluded in the policy. [333-335] This court declined to consider an argument that was raised for the first time on appeal. [335]

CIVIL ACTION commenced in the Superior Court Department on March 20, 2009.

The case was heard by *Renee P. Dupuis,* J., on motions for summary judgment.

*Alan S. Fanger* for the plaintiff.

*James J. Duane, III* (*Jennifer L. Rosseau* with him) for the defendant.

BROWN, J. This appeal arises from a decision of a Superior Court judge, on cross motions for summary judgment, that the defendant, United States Liability Insurance Company (USL), did not have a duty to defend the plaintiff, James Freedman. We affirm.

*Background.* Freedman owned real estate located at 3162 Washington Street in the Jamaica Plain section of Boston. Freedman leased the premises to Mirtha Encarnacion and her husband, who owned and operated an automobile repair facility on the site known as Anthony's Auto Body Repair, Inc. Beginning in

May, 2003, Encarnacion began to have trouble paying her rent and from time to time made partial payments. Freedman issued several notices to quit for nonpayment of rent, but did not follow through with eviction. There followed numerous events whereby Freedman harassed Encarnacion.

On or about September 11, 2003, Encarnacion received numerous threatening and harassing telephone calls from Freedman, who threatened to have his wife come to the premises and beat her up. On December 26, 2003, Freedman called Encarnacion at her home twenty-three times between 9:00 P.M. until approximately midnight. During these calls, Freedman would call Encarnacion "stupid" and yell, "Fuck you. Where is my money? I want my money." Freedman further informed her that he was having the premises watched and that she should be careful. On January 9, 2004, Freedman went to the premises and started yelling at Encarnacion in front of two customers. He demanded his money, and stated, "Stupid fucking Spanish."

As a result of Freedman's actions, Encarnacion feared for her safety and began to suffer from increasingly severe anxiety attacks. She sought medical treatment (multiple visits to the emergency room at Faulkner Hospital) and was placed on various medications for stress and anxiety, and eventually she was referred to a psychiatrist.

Following the January 9 incident, Encarnacion filed a complaint against Freedman in the Superior Court, seeking a restraining order. In March, 2005, she amended her complaint, alleging both negligent and tortious intentional infliction of emotional distress, as well as interference with business relations.

Freedman had been issued a commercial liability insurance policy (policy) from January 31, 2003, to January 20, 2004, by USL. Although USL initially agreed to defend Freedman against Encarnacion's complaint, it reserved its rights and subsequently declined to provide a defense, asserting that there was no coverage under the policy because Encarnacion's injuries did not arise from an "occurrence" and that her injuries did not constitute "bodily injury." Ultimately, Encarnacion prevailed on her complaint and was awarded $6,000 in damages.

On March 20, 2009, Freedman commenced the present action

against USL for breach of contract and violation of G. L. c. 93A.[1] On cross motions for summary judgment, a Superior Court judge denied Freedman's motion and allowed USL's motion, concluding that Encarnacion sought recovery solely for emotional distress, that her claims did not arise from "bodily injury" as that term is used in the policy, and that the policy thus did not provide coverage.[2] In addition, the judge rejected Freedman's alternative theory that the policy provides "coverage for violation of Encarnacion's right of private occupancy."

Freedman has appealed, arguing that the judge, in granting summary judgment, improperly looked to the form of Encarnacion's cause of action rather than the substance of her claims. He presses his argument based on the policy's coverage for "Personal and Advertising Injury," claiming that Encarnacion's complaint roughly sketched (see *Billings* v. *Commerce Ins. Co.*, 458 Mass. 194, 200 [2010]; *Metropolitan Property & Cas. Ins. Co.* v. *Morrison*, 460 Mass. 352, 357 [2011]) a claim for "invasion of the right of private occupancy of premises."

*Discussion.* We determine an insurer's duty to defend the insured under a policy by looking to the complaint's allegations and any other facts known by the insurer. *Desrosiers* v. *Royal Ins. Co.*, 393 Mass. 37, 40 (1984). "The process is not one of looking at the legal theory enunciated by the pleader but of 'envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.' " *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 12-13 (1989), quoting from *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 318 (1983). If the allegations in the complaint and other extrinsic facts are "reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms," the duty to defend arises. *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984) (quotation omitted). See *Sterilite Corp.* v. *Continental*

---

[1] Freedman does not contest on appeal that the motion judge erred in granting summary judgment as to his c. 93A claim, but rather confines the appeal to the claim for breach of contract.

[2] Freedman does not challenge this ruling on appeal.

*Cas. Co., supra* at 319 (underlying complaint, even with general allegations, need only demonstrate a possibility that the liability claim falls within the insurance coverage).

Upon review of the briefs and record appendix, we conclude that the entry of summary judgment in favor of the insurer was appropriate. It should no longer need to be said that at the appellate level, the court examines a grant of summary judgment de novo, viewing the evidence contained in the summary judgment record in the light most favorable to the nonmoving party. See *Miller* v. *Cotter*, 448 Mass. 671, 676 (2007).

The plaintiff contends that his incessant calls to Encarnacion's home, threats to do bodily harm, and yelling at Encarnacion at the automobile body shop should be read as constituting more than emotional distress, i.e., encompassing personal and advertising injury. However, the language within the Encarnacion complaint is clear. All three counts alleged — and indeed, the underlying facts suggest — that the plaintiff engaged in behavior that was specifically excluded in the policy.[3]

To the extent Freedman claims the policy explicitly covers "bodily injury" arising out of "the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor," Encarnacion never made any such claim.[4] She did not complain of Freedman's appearance on the premises as landlord nor did she deny his right to be there. Rather, she based her claims for emotional distress and interference with contractual relations on Freedman's harassing and threatening behavior while there. Accordingly, the motion judge could properly

---

[3]Exclusion a(1) of the policy states that coverage will not apply to actions "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " Cf. *Norfolk & Dedham Mut. Fire Ins. Co.* v. *Cleary Consultants, Inc.*, 81 Mass. App. Ct. 40, 52-54 (2011).

[4]We agree with the judge's reasoning that "Encarnacion did not base her claims against Freedman on violation of her right of private occupancy, or the concomitant covenant of quiet enjoyment." We also note that Freedman does not directly address the issue of bodily injury in his appeal. See *Fuller* v. *First Financial Ins. Co.*, 448 Mass. 1, 5 n.6 (2006); *Richardson* v. *Liberty Mut. Fire Ins. Co.*, 47 Mass. App. Ct. 698, 702, 703 (1999). See also *Sullivan* v. *Boston Gas Co.*, 414 Mass. 129, 138 n.9 (1993).

conclude, as she did, that the underlying suit was not an invasion of the right of private occupancy.

Finally, Freedman points out that the policy provides coverage for "oral or written publication of material that disparages a person's or organization's goods, products or services." He goes on to argue that because Encarnacion's complaint implicates coverage for "disparagement or defamation," his statements were defamatory, pointing specifically to his use of offensive racial slurs. The short answer to this contention is that it was not raised below.[5] New theories of liability raised for the first time on appeal are deemed waived. *Martins* v. *University of Mass. Med. Sch.*, 75 Mass. App. Ct. 623, 634 n.17 (2009).

*Judgment affirmed.*

---

[5]Even though our review is de novo, we note the motion judge's failure even to mention it.