Ferrara, John S., J.
On July 29, 2012, the plaintiff, Charles Bohigian, brought this action against the defendant, the University of Massachusetts Medical Center (“the employer” or “UMass”). Bohigian’s claims are of discrimination on the basis of his gender, in violation of G.L.c. 151B, §4(1) (Count 1), and of retaliation, in violation of G.L.c. 151B, §4(4) (Count 2). UMass alleges Bohigian has not made a prima facie case for each claim and that, even if it is determined he has, he has not sufficiently rebutted the employer’s proffered nondiscriminatory and nonretaliatory reasons for its actions.
UMass now moves for summaiy judgment pursuant to Mass.R.Civ.P. 56. For the reasons set forth below, UMass’s motion for summaiy judgment is ALLOWED.
BACKGROUND
The facts and reasonable inferences therefrom, viewed in the light most favorable to the nonmoving party, the plaintiff, are as follows;[1]
Bohigian was hired by UMass on January 9, 2006, as a patient transporter, a job which required that he transport patients around the hospital by wheelchair or hospital bed. Bohigian’s direct supervisor was Karen Charron, who was in turn supervised by Deborah Cox.
From January 2006 to March 2007, Bohigian’s work record was unblemished. In or around March or April 2007, graffiti was discovered in an area accessible to Bohigian and others in his position.[2] Charron told the plaintiff that a co-worker had implicated him in writing the graffiti and, because it involved male genitalia, Charron believed it must have been written by a man. Bohigian was the first to be interviewed by Cox regarding the graffiti. Not all of the other employees who had access to the area were interviewed. Bohigian denied any knowledge of the graffiti, and was never disciplined for it.
On or around May 2, 2007, a hospital nurse sent an email to a human resources associate complaining about Bohigian’s conduct toward a patient. Reportedly, Bohigian had handled the patient roughly during her transport and used profanity in her presence. On May 15, 2007, Cox and a Human Resources employee, Holly DeNike, told Bohigian about the allegations and made him aware that a disciplinary process was under way. Based on Bohigian’s perception he had been unfairly targeted, he told Cox he would be filing a grievance against her and she responded by yelling at him, although she did tell him it was within his rights to do so.
*578 On May 17, 2007, Bohigian learned UMass planned to issue a final written warning, and filed a grievance protesting this discipline. In his grievance, Bohigian alleged discrimination, although he did not specify any basis. While, under the employer’s plan of progressive discipline, a final warning typically is not issued after one incident, the employer stated that it based its decision on the nature of the allegations. On May 21, 2007, a meeting was scheduled with Bohigian to issue him the written warning. DeNike stated in an affidavit that Bohigian objected to the union steward assigned to him for that meeting and refused to meet. DeNike stated that despite Bohigian’s refusal to meet, he was presented with the written warning and refused to sign it. Bohigian is silent on the subject of the meeting, but acknowledged in his deposition that he refused to sign the written warning, although he testified he did not see a copy of it. The document contained a warning that any further incidents of this nature, “i.e., unprofessional behavior, rough treatment of a patient, use of foul language, toward a patient, visitor and/or a co-worker, will result in disciplinary action up to and including termination of employment.”
In late July 2007, a patient registration representative reported witnessing Bohigian treat a patient poorly and another hospital employee reported witnessing other offensive conduct by Bohigian to the same patient. The conduct allegedly included Bohigian calling the patient rude, gesturing at the patient with his middle finger behind her back, in the view of others, and bragging after the fact about having abandoned the patient, who was using a wheelchair, in the bathroom. On July 23, 2007, Bohigian met with Cox, Charron and Daryl Benjamin of Human Resources, along with a union representative. The plaintiff was then suspended, and on August 1, 2007, he was formally terminated from employment. The reasons provided in the letter terminating Bohigian were unprofessional conduct, specifically that he had made an inappropriate comment to a patient, and that during the investigation into the incident he was coercing or badgering witnesses for support. The letter discharging Bohigian also cited the May 2007 final written warning for “unprofessional conduct/behavior.” A form filed regarding his discharge had a series of check boxes. Checked were those for “Conflict with other employees” and “Performance issues.” Another copy of the same form had a check mark only in the box for “Performance issues" and included the additional comment “Unprofessional conduct.”
Bohigian claims UMass discriminated against him through the actions of Charron and Cox, as well as Benjamin, a Human Resources employee whom he claims failed to make a proper investigation of the situation. He claims that following the graffiti incident in April 2007, he was retaliated against in various ways, up to and including his termination in August 2007.
I. The Discrimination Claim
This case must be approached using the three-part, burden-shifting analysis laid out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and subsequently interpreted through Massachusetts case law. Under the McDonnell Douglas framework, when a plaintiff seeks to prove inferentially that an adverse employment action had a discriminatory basis, he must first make a prima facie case of discrimination. Id.; Knight v. Avon Prods., Inc., 438 Mass. 413, 420 (2003); Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 116 (2000). The elements of that are showings of 1) membership in a protected class; 2) harm; 3) “some evidence that would warrant a finding that a discriminatory animus was at work in bringing about the adverse employment action.” King v. City of Boston, 71 Mass.App.Ct. 460, 467-68 (2008).[3]
If a plaintiff successfully makes out a prima facie case, the burden shifts to the defendant employer to articulate a nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802; Wheelock Coll. v. Massachusetts Comm’n Against Discrim., 371 Mass. 130, 136 (1976). At this stage, defendant employers should also articulate facts in support of such reason. Wheelock, 371 Mass. at 136. If this burden is met, the case proceeds to stage three.
In stage three, the burden shifts back to the plaintiff. To survive at this stage, the plaintiff must show only that at least one of the proffered reasons for the action was a pretext. Blare v. Husky Injection Molding Sys. Boston, 419 Mass. 437, 442-43 (1995). He need not provide further proof of discriminatory intent, although direct evidence of discrimination will also suffice. Id. at 444-45.
(O)nce a plaintiff has established a prima facie case and further shows either that the employer’s articulated reasons are a pretext or by direct evidence that the actual motivation was discrimination, the plaintiff is entitled to recovery for illegal discrimination under G.L.c. 151B . . . With respect to summary judgment, it follows that, if a plaintiff has produced evidence sufficient to support a prima facie case of discrimination, and has further offered evidence sufficient to support a determination either that the employer’s reason was a pretext or that the actual reason for the adverse hiring decision was discrimination, summary judgment for a defendant is inappropriate.
Id. at 444-45. In 2000, the court clarified this formulation, explaining that a literal reading of the word “entitled” usurped the jury’s role. Abramian, 432 Mass. at 117-18. The court held:
A showing that the employer’s reasons are untrue gives rise, therefore, to an inference that the plaintiff was a victim of unlawful discrimination. That inference, together with the elements described in stage one, establishes a prima facie case sufficient *579 to withstand a motion for directed verdict under Mass.R.Civ.P. 50(a) . . . Together, they provide sufficient basis for the jury to return a verdict for the plaintiff. .. The employer may counter the effect of this evidence by showing that, even if his articulated reason for the adverse action is untrue, he had no discriminatory intent, or that his action was based on a different, nondiscriminatoiy reason. Correspondingly, the plaintiff is not limited to the falsity of the employer’s articulated reasons in proving discrimination.
Id. at 118.
It is not intended to be onerous for a plaintiff to make out a prima facie case. Sullivan, 444 Mass. at 45. Here, the plaintiff has provided some evidence of discrimination based on gender in the form of his being targeted during the graffiti investigation and the stated conviction by one of his supervisors that only a man would have written the graffiti. He has met the burden regarding protected class and adverse action.[4] However, he fails to show “that a discriminatory animus was at work in bringing about the adverse employment action ... [or that] the challenged action ‘occurred in circumstances that raise an inference of unlawful discrimination.’ ” King, 71 Mass.App.Ct. at 468, quoting Sullivan v. Liberty Mutual Co., 444 Mass. 34, 39 (2005).
While Bohigian does allege that he was targeted based on gender in an investigation in or around April 2007, he received no discipline or sanction based on this investigation. He subsequently did receive discipline and was thereafter terminated, but Bohigian does not complain of any circumstances surrounding these actions that suggest unlawful discrimination. Rather, he asserts that the discriminatory motive he believes was evident in April 2007 when he was investigated regarding the graffiti was still present and should be found to have caused the May 2007 discipline and the August 2007 termination. However, he has adduced no evidence in support of this contention except that the May 2007 discipline and the August 2007 termination followed the April 2007 investigation. This is insufficient to establish circumstances that raise an inference of unlawful discrimination, particularly as there were intervening events prior to the discipline and termination. See Sullivan, 444 Mass. at 43 (‘The purpose of the prima facie case is to identify those circumstances where the employer’s actions, ‘if left unexplained, are more likely than not based on unlawful discrimination’ ”).[5]
Furthermore, even if the plaintiff had made out his prima facie case, the defendant employer clearly has met its burden in the next stage, proffering two separate instances where it received reports of the plaintiffs inappropriate conduct with patients as nondiscriminatoiy reasons for its decision to fire him. McDonnell Douglas, 411 U.S. at 802; Sullivan, 444 Mass. at 51; Wheelock, 371 Mass. at 136. That would advance the analysis to the third stage, where the plaintiff is tasked with showing that at least one reason given for his firing was a pretext or with showing other evidence of a discriminatory motive for the action. Abramian, 432 Mass. at 118; Blare, 419 Mass. at 444-45. Bohigian does not dispute that the employer received negative reports regarding his treatment of two patients. He further does not dispute that these reports were made by three separate individuals who were not involved in his supervision, hiring, or firing, and that he was unaware of any reason they had to dislike him. Notably, he does not accuse any of these individuals of discriminatory conduct. He does dispute their truthfulness, but acknowledges that if the employer and his supervisors believed these reports, they would have been justified in disciplining him.
Bohigian fails to rebut the proffered non-discriminatory reason, that there were complaints about his conduct. See Sullivan, 444 Mass. at 57 (“There is ample, uncontroverted evidence that the negative impression ... of [the plaintiffs] abilities was a primary reason she was selected for layoff’). He has acknowledged that there were reports of negative behavior to Bohigian’s supervisors which, if believed, justified his firing. This does nothing to assist Bohigian in meeting his burden of showing that concerns about his treatment of patients were a pretext. Tate v. Department of Mental Health, 419 Mass. 356, 362 (1995) (“The employee must prove by a preponderance of the evidence that the asserted lawful reason was not the real reason for the termination”). See also Sullivan, 444 Mass. at 57 (concluding, in affirming dismissal of the plaintiffs case on summary judgment, “[plaintiff] does not challenge whether [employer] truly believed that her mishandling of the environmental case jeopardized the Boston office’s abilify to retain environmental cases during a period of declining caseloads”). Finally, in addition to failing to rebut the employer’s proffered non-discriminatory reason, Bohigian has provided no other admissible evidence that would be direct evidence of discrimination. Therefore, even if Bohigian had made out a prima facie case, his case would fail at the third stage.
II. The Retaliation Claim
To state a claim against an employer for retaliation under G.L.c. 151B, §4(4) or (4A), a plaintiff must show that 1) he engaged in a protected activity; 2) he suffered an adverse employment action at the time or after the protected conduct occurred; and 3) a causal nexus exists between the adverse action and the protected conduct. Mole v. University of Mass., 442 Mass. 582, 591-92 (2004). The plaintiff need not prove that actual discrimination occurred, Poon v. Massachusetts Inst. of Tech., 74 Mass.App.Ct. 185, 200 (2009), only that,
[he] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, *580 that [he] acted reasonably in response to [his] belief, and that the [employer’s] desire to retaliate against [him] was a determinative factor in its decision to terminate [his] employment.
Tate, 419 Mass. at 364.
Bohigian alleges that retaliation ensued on the heels of his statement he would be filing a grievance against his supervisor, a protected activity under G.L.c. 151B. See Mole, 442 Mass. at 591. (He fails to acknowledge, however, that discipline was already under way at the time he stated he would be filing, and then filed, a grievance.) He also alleges further retaliation, his firing, followed no more than four months after his grievance. The plaintiff has demonstrated that he suffered an adverse action; he was terminated from his job. The question is whether a sufficient nexus exists between his grievance and his termination. Poon, 74 Mass.App.Ct. at 199-200.
Bohigian offers temporal evidence in support of his claim. Such evidence may be sufficient to create an inference of causation. See Mole, 442 Mass. at 592 (“[I]f adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer’s becoming aware of the employee’s protected activity, an inference of causation is permissible”). See also Ritchie v. Department of State Police, 60 Mass.App.Ct. 655, 666 (2004). Bohigian’s work performance had been without complaint until shortly before his grievance and, less than two and a half months after it, he was terminated. However, even assuming without deciding that the plaintiffs temporal evidence is sufficient to create an inference of causation, the plaintiffs case fails at the later stages.
Once the plaintiff has made a prima facie showing, the burden shifts to the defendant to produce a legitimate, non-retaliatory reason for the adverse employment action. Mole, 442 Mass. at 591. If the defendant does so, “in the wake of the defendants’ introduction of nonretaliatoiy reasons for the various actions taken, [plaintiff has] the burden of proving that the articulated nonretaliatoiy reasons were pretext.” Id. The defendant has articulated a nonretaliatoiy reason for Bohigian’s dismissal — reports of his inappropriate conduct toward two patients. The burden has thus shifted back to the plaintiff to demonstrate that this reason was pretext and that retaliation was the real reason for the adverse employment action. Id. at 591-92.
Bohigian now bears the burden to demonstrate that the “desire to retaliate against [him] was a determinative factor in its decision to terminate [his] employment.” Tate, 419 Mass. at 364. Another formulation of this is that “but for the filing and pursuing of [the plaintiffs] original discrimination claim the adverse reaction would not have been taken by the defendant.” MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996).
Bohigian has adduced no evidence that would support the conclusion that his firing was retaliatory nor that would challenge the proffered nonretaliatoiy reason for discharge. See Poon, 74 Mass.App.Ct. at 201-02 (concluding there was “abundant nonretaliatoiy justification” for a complained of action and therefore summary judgment for the defendant was appropriate, despite that, as in the present case, the time between complaint and adverse action was just a few months). Bohigian acknowledges that he is not accusing the third parties who reported his misconduct of discrimination, only his supervisors, who acted upon those reports. Further, he acknowledges that if they believed the reports, that would have been grounds for disciplining him. Therefore, he has failed to “placel ] the issues of motivation and causation into legitimate dispute.” Martins v. University of Mass. Medical School, 75 Mass.App.Ct. 623, 630 (2009).
This is a different situation than when a lower level employee has a bias against a plaintiff, makes false reports about that plaintiff, and the decision maker then takes adverse action against a plaintiff based on a false report. In that type of situation, an employer may be liable for the discriminatory or retaliatory intent of its employee if it did not exercise a sufficiently independent judgment. See Mole, 442 Mass. at 598. In this case, instead, Bohigian alleges the bias lies with the decision makers, and that this somehow led them to fail to discount what he says were false complaints. Ultimately, the conduct Bohigian complains of and claims indicates bias appears to be the supervisors’ failure to disbelieve the third-party reports and/or to probe them closely enough to determine, as the plaintiff claims, that they were false.
It does not “placel ] the issues of motivation and causation into legitimate dispute” that the plaintiffs supervisors believed negative reports about the plaintiff from three separate, apparently disinterested, sources, particularly where the plaintiff does not allege those sources held any bias. Martins, 75 Mass.App.Ct. at 630. Therefore, summary judgment is appropriate as Bohigian cannot meet his burden of showing that his termination was causally connected to his protected conduct of filing a grievance.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendant’s Motion for Summary Judgment is ALLOWED.

 Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005).

 The record does not reveal whether Bohigian was the only male employee with access to this area.

 The defendant asserts the plaintiff must show that he was treated less well than a female employee who was similarly situated. However, while comparator evidence is often persuasive, it is not required to make a prima facie case. Trustees of Health and Hosp. of Boston, 449 Mass. at 682-83.

 The defendant does not dispute that the plaintiff is part of a protected class, or that he suffered an adverse action.

 Quoting Lewis v. Boston, 321 F.3d 207, 214 (1st Cir. 2003).